UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GIANNINI, | No. 2:21–cv–0581–TLN–KJN PS |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Although no discovery motion is currently pending, the court issues this order in response to plaintiff's affidavit filed on July 7, 2022, and defendants' response filed on July 13, 2022.[1] (ECF Nos. 41, 42.)

**BACKGROUND**

The above filings relate to plaintiff's ongoing effort to obtain the juvenile case files from his three children's 2019 removal proceedings in the Sacramento County Superior Court ("Juvenile Court"), which gave rise to the instant civil rights suit. The court previously denied without prejudice plaintiff's motion to compel defendant the County of Sacramento to produce the case files because the motion was not filed in compliance with Local Rule 251, governing

---

[1] Because plaintiff is now representing himself without counsel, the case is referred to the undersigned magistrate judge for all pretrial proceedings pursuant to Local Rule 302(c)(21). See 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.

1

1   discovery motions. (ECF Nos. 35, 39.) In opposition to that motion, the County represented that
2   it expected to have the case files ready for production within 30 days. (ECF No. 38 at 3, filed
3   June 20, 2022.) Thus, in its June 22nd minute order, the court permitted plaintiff to renew his
4   motion to compel "[s]hould the County fail to produce the desired records within 30 days as
5   anticipated," with a demonstrated good faith effort to meet and confer.[2] (ECF No. 39.)

6         On July 7, 2022, plaintiff filed an "affidavit outlining a failure to meet and obtain a joint
7   statement" and a declaration in support. (ECF No. 41.) This filing came well before the 30-day
8   time frame specified, which has yet to expire as it falls (at the earliest) on July 20, 2022. It
9   appears that the purpose of the affidavit was to inform the court that defense counsel was not
10  responding to certain emails quickly enough and was refusing to state a specific date and time
11  when the case files would be produced—thereby supposedly violating Local Rule 251's conferral
12  requirements and warranting sanctions. On July 13, 2022, defendants filed a response and
13  supporting exhibits. (ECF Nos. 42, 42.1.)

14  **DISCUSSION**

15        A Local Rule 251(d) affidavit is meant to be filed in connection with an existing discovery
16  motion, not whenever a party feels that discovery negotiations are going poorly. Plaintiff did not
17  file a renewed motion to compel or notice a hearing date with his affidavit, and the court declines
18  to construe the affidavit itself as a motion. Filing an actual motion with a noticed hearing date is
19  important as it sets the deadline for either (a) the parties to file a joint statement regarding the
20  discovery dispute (Local Rule 251(a), the preferred method), or (b) the opposing party to file a
21  response to the motion (Local Rule 251(e)) if no joint statement could be obtained.

22        Moreover, defense counsel's conduct and communications regarding these case files is far
23  from sanctionable. As shown in the attachments to the County's response to plaintiff's affidavit,
24  plaintiff emailed defense counsel several times a day over a condensed period of time—including
25  on evenings, weekends, and holidays—and since July 5th, defense counsel Carl Fessenden replied
26  to all inquiries within a few days or even a few hours. (There was an initial slight delay in

---

[2] The court did not <u>order</u> the County to produce the case files, as plaintiff's subsequent communications to defense counsel seem to suggest.

responses due to the departure of the associate with whom plaintiff was corresponding about the case files production.) (ECF No. 42.1 at 15-28.) Plaintiff is understandably frustrated at not having yet received his children's case files—which he says he requested from the County Department of Child, Family and Adult Services ("DCFAS") back in 2019. (See ECF No. 35 at 6-7, 11, 89-90.) However, now that plaintiff is representing himself, he will be held to the same standards of professional courtesy that apply to all who appear before the court. It is not appropriate to email opposing counsel dozens of times within a week regarding production that has already been agreed to and threatening to request sanctions.

That said, the substance of plaintiff's concerns regarding the production of the case files appears well founded. Normally, without an active discovery motion and an opportunity for a hearing, the court is loathe to enter a discovery order. However, in the interest of resolving this case file production dispute that is already taking so much of the parties' and the court's time, the court issues the following order.

In its response to plaintiff's affidavit, the County represents that it has the case files in hand and "is ready to turn over the file" once plaintiff signs a Protective Order. (ECF No. 42 at 2.) The Protective Order requirement is news to the court—and news to plaintiff (although it seems to have been discussed with plaintiff's counsel before he withdrew from the case). As best the court can tell from the attachments to the County's response, defense counsel Mr. Fessenden obtained the case file(s) by personally petitioning the Juvenile Court for access to them early in 2022. The Juvenile Court granted Mr. Fessenden's petitions (one for each of the three children) on March 7, 2022. (ECF No. 42.1 at 5-12.) The Juvenile Court's orders specify that "Petitioner may disclose documents relevant to the litigation upon entry of the protective order proposed in Exhibit B of the petition." (E.g., id. at 6.) Neither the petition nor its Exhibit B (the Protective Order) were provided to this court, but the language of the order suggests that Mr. Fessenden was petitioning the Juvenile Court for access to the case files for use in the instant civil rights suit.

///

///

///

In California, disclosure of "juvenile case files" is governed by California Welfare & Institutions Code § 827 and a collection of state court rules and standing orders.[3] Section 827 sets out specific entities and classes of people who are authorized to either "inspect" or "receive copies" of case files, or both. Cal. Welf. & Inst. Code § 827(a)(1), (a)(5). The subject minor's "parent or guardian" is entitled both to inspect and receive copies of case files for their children. Id. § 827(a)(1)(D), (a)(5). "With the exception of those persons permitted to inspect juvenile case files without court authorization under sections 827 [and other sections not applicable here], every person or agency seeking to inspect or obtain juvenile case files must petition the court for authorization." Cal. Rules of Court, rule 5.552 (confidentiality of records).

Under the Standing Order of the Juvenile Court in question, "[t]he persons and agencies identified in section 827(a)(1)(A)-(O) are authorized to inspect the juvenile case files without having to file a [ ] petition." Standing Order of Superior Court of California, County of Sacramento, Sitting as the Juvenile Court, No. SSC-JV-99-021, Ninth Amended Order: Disclosure of Juvenile Case Files, p.3, https://www.saccourt.ca.gov/juvenile/delinquency/orders/docs/ssc-jv-99-021.pdf. Such persons—including a minor's parent, § 827(a)(1)(D)—may instead simply file a Declaration for Access with the court and provide proper identification. Id. at p.3-4. Further, "those persons identified in section 827(a)(5) are authorized to receive copies of the case file records without a further court order." Id. at p.4. As mentioned, the minor's parents are among those identified in § 827(a)(5). Alternately, if the documents sought are in the possession of an agency, the person must follow the agency's procedures for disclosure. Id. at p.3.

It is not entirely clear why Mr. Fessenden needed to personally petition the Juvenile Court to obtain the case files and prepare them for plaintiff—rather than having his client, the County, search the records of its agency (DCFAS) and produce the files to plaintiff directly. Perhaps it is

---

[3] "A 'juvenile case file' means a petition filed in a juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer." Cal. Welf. & Inst. Code § 827(e).

1  because the case files were exclusively in the possession of the Juvenile Court by that point.  Or
2  perhaps it is because case law suggests that a court order is required for counsel to inspect
3  juvenile case files in any manner.  See Gonzalez v. Spencer, 336 F.3d 832, 834-35 (9th Cir. 2003)
4  (per curiam) (private counsel for L.A. County "had to get court permission before inspecting
5  [plaintiff's juvenile court] file" by petitioning juvenile court), abrogated on other grounds by
6  Filarsky v. Delia, 566 U.S. 377 (2012); People v. Williams, No. F069933, 2016 WL 5373073,
7  at *4 (Cal. Ct. App. 5th Dist. Sept. 23, 2016) (declining to decide whether prosecutor had to
8  petition juvenile court in order to obtain § 827 records from police department for use at trial).

9       Regardless, Mr. Fessenden now has the case files.  Because Mr. Fessenden, of course, is
10  not connected to the subject minors in any way outside of the context of the instant civil rights
11  suit, it makes sense that the Juvenile Court limited Mr. Fessenden's further disclosure of those
12  case files (a) to those documents "relevant to the litigation" (presumably, meaning this civil rights
13  suit) and (b) to those persons who sign the Protective Order that Mr. Fessenden attached to the
14  Juvenile Court petition.  (See ECF No. 42.1 at 6.)

15       In dutiful compliance with that limitation, Mr. Fessenden is now conditioning the
16  production of the case files to plaintiff upon plaintiff signing the Protective Order.  That decision
17  would be unassailable if plaintiff were any other third party.  However, because plaintiff is
18  undisputedly the children's father, entitled to the case files in his own right, the court hereby
19  orders Mr. Fessenden to produce the case files to plaintiff without requiring plaintiff to sign the
20  Protective Order—notwithstanding the Juvenile Court's March 7, 2022 orders.

21       As explained above, "[a] party to a juvenile court proceeding, including a parent or
22  guardian, generally has the right to inspect and copy the juvenile case file without the need for an
23  order authorizing disclosure of the file to the party."  In re S.F., No. A138957, 2014 WL 508516,
24  at *12 (Cal. Ct. App. 1st Dist. Feb. 10, 2014) (footnote omitted).  It is unclear precisely why
25  plaintiff was unable to, himself, successfully request the case files from the Juvenile Court, or
26  from the County/DCFAS.  Perhaps he did not fully comply with the various procedures required
27  to obtain the files (even without a petition).  In any event, plaintiff's filings demonstrate that he
28  has been foiled for years in attempting to obtain the case files which, by all appearances, should

1 have been given to him long ago.

2 If plaintiff had succeeded in obtaining the case files directly from the Juvenile Court or from DCFAS, nothing the court can see in the text of the above statutes, rules, and orders would condition his receipt of the files on the signing of any kind of protective order. While the court could leave it to plaintiff to try again to obtain the files directly from the Juvenile Court or DCFAS if he wants to avoid signing Mr. Fessenden's Protective Order,[4] that would be highly inefficient, and it is unlikely that another attempt would fare better than plaintiff's last attempt(s).

Although the court does not lightly issue a ruling in conflict with a state court order, this order is warranted by the above circumstances and the fact that this federal court can order disclosure of the case files as relevant discovery material in this case, notwithstanding § 827. See Gonzalez, 336 F.3d at 835 ("[T]he district court could have ordered disclosure [of the juvenile case file] notwithstanding state law." (referring to § 827)). The court finds good cause to do so in this instance. Accordingly, Mr. Fessenden on behalf of the County shall produce the full juvenile case files to plaintiff without requiring his entry into the Protective Order.

The court does not address plaintiff's concerns regarding the possible absence of certain mental health provider records from "Dr. Grainger" in the case files. The court trusts that whatever materials the County produces to plaintiff as part of the juvenile case files are the entirety of the materials that qualify within that definition. See Cal. Welf. & Inst. Code § 827(e).

The court also cautions plaintiff (and all parties) that this case does not appear to be at the stage where full discovery is warranted. Because of the still-pending motion to dismiss (ECF No. 19), the pleadings are not yet settled, and no case schedule exists. The court's exercise of discretion to assist the parties in resolving this particular discovery issue does not mean that it will necessarily welcome any and all discovery motions before the dismissal motion is decided. This is an extremely overburdened federal court, but a written order or findings and

---

[4] The court is unsure exactly how it would prejudice plaintiff to simply sign the Protective Order, as it would seem that he shares the County's and the Juvenile Court's interest in maintaining the confidentiality of his children's case files. Still, entering the Protective Order would likely add a layer of liability and procedural formality that would not otherwise exist if plaintiff had been able to obtain the case files directly.

recommendations on the motion to dismiss will issue in due course—after which the court envisions holding a scheduling conference.

Finally, the court observes that plaintiff has yet to make his election on whether to Decline or Consent to the jurisdiction of the Magistrate Judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). The parties were ordered to make their respective elections by June 30, 2022, and plaintiff was mailed consent information and a Consent/Decline form to complete. (ECF No. 34, Order dated 5/31/2022.) There is no obligation to consent, but a response is needed in order to assist the court in determining how the action will be administratively processed. Under Federal Rule of Civil Procedure 73(b)(1), the judges will not be notified of a party's choice unless all parties consent to the Magistrate Judge's full jurisdiction.

Accordingly, IT IS HEREBY ORDERED that:

1. Within 10 days of the entry of this order, the County shall produce to plaintiff the full juvenile case files referenced herein without requiring plaintiff's entry into the state court protective order. The parties shall confer as to the appropriate method of production; and

2. Within 14 days of the entry of this order, plaintiff shall file his completed Consent/Decline form.

Dated: July 18, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gian.0581