UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GIANNINI,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>    Defendants. | No. 2:21–cv–0581–KJN PS<br><br>ORDER VACATING DISCOVERY ORDER<br>& DENYING MOTION FOR INJUNCTION<br><br>(ECF Nos. 48, 50.) |

Before the court are defendants' motion for reconsideration of the court's July 18, 2022 discovery order and plaintiff's motion for permanent injunction or sanctions.[1] (ECF Nos. 48, 50.) As explained below, the court GRANTS defendants' motion and DENIES plaintiff's motion.

**REQUEST FOR RECONSIDERATION**

On July 18, 2022, the court issued a sua sponte order in response to the parties' filings describing a discovery dispute over defendant the County of Sacramento's production of juvenile case files from plaintiff's children's 2019 removal proceedings in the Sacramento County Superior Court ("Juvenile Court"), which gave rise to the instant civil rights suit. (ECF No. 43 ("July 18th Order").) As relevant, the court ordered the County to produce the case files to

---

[1] The parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c), and the case was reassigned to the undersigned for all purposes on July 27, 2022. (ECF Nos. 40, 45, 47.) The new case number is reflected in the case caption.

plaintiff without requiring plaintiff to sign a protective order that defense counsel argued was necessary in order to comply with the Juvenile Court's March 2022 orders that provided the case files to defense counsel in the first place. (Id. at 3-7.) On July 27, 2022, defendants filed the instant request for reconsideration under Federal Rule of Civil Procedure 54(b), requesting the court vacate or modify its July 18th Order as clearly erroneous because it directly contradicts the Juvenile Court's March 2022 orders. (ECF No. 48.)

Rule 54(b) governs requests like this one for reconsideration of the court's interlocutory orders. See Fed. R. Civ. P. 54(b) (stating that any order adjudicating fewer than all claims in the action "may be revised at any time before the entry of a judgment"). So long as the court still has jurisdiction over a case and a final judgment has not been entered, the court has both inherent power and authority under Rule 54(b) to modify or reconsider its interlocutory orders. See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886-87 (9th Cir. 2001). As a general rule, a court should "leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." Persistence Software, Inc. v. Object People, Inc., 200 F.R.D. 626, 627 (N.D. Cal. 2001). However, "[a] district court may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." Hydranautics v. FilmTec Corp., 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own . . . in any circumstance.").

The County argues that the July 18th Order was based on clear error and is contrary to principles of comity because it requires defense counsel to violate the Juvenile Court's March 2022 orders. In light of the additional information in the request for reconsideration, the court agrees and therefore vacates in part the July 18th Order.

It appears that the County only possesses the juvenile case files by virtue of the Juvenile Court's March 7, 2022 orders granting defense counsel Mr. Fessenden's Section 827 petitions for access. (See ECF No. 42.1, Ex. A.) The Juvenile Court's order in each of the three cases specifies that "Petitioner may disclose documents relevant to the litigation [(meaning the instant

federal civil rights suit)] upon entry of the protective order proposed in Exhibit B of the petition." (E.g., ECF No. 42.1 at 6.)  Defendants attach to their request for reconsideration a copy of the protective order that was proposed to the Juvenile Court.  (ECF No. 48.1 ("the Protective Order").)  The court now understands that the Juvenile Court therefore specifically intended that plaintiff (whom it knew to be the children's father) and any other parties or their counsel in this federal case should only be able to receive the case files from Mr. Fessenden if they entered (that is, signed) the Protective Order.  In issuing the July 18th Order, the court mistakenly believed that the protective order proposed to the Juvenile Court was a more generic protective order that the Juvenile Court would not have intended to apply to the children's father—who normally would be entitled to inspect and receive copies of his children's case files in his own right.  See Cal. Welf. & Inst. Code § 827(a)(1)(D), (a)(5).

"Principles of comity . . . preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States."  Gilbertson v. Albright, 381 F.3d 965, 970 (9th Cir. 2004) (quotation and footnote omitted).  Although the Juvenile Court did not issue a protective order, as was true in the cases defendants cite in their reconsideration request, it did expressly order that Mr. Fessenden was not to disclose the case files to anyone without their entry into the Protective Order attached to the petitions.  (E.g., ECF No. 42.1 at 6.)  This court's July 18th Order directly contravened the Juvenile Court's order by requiring Mr. Fessenden to produce the case files to plaintiff without his entry into the Protective Order.  The court now recognizes this was clear error because it directly contradicted the Juvenile Court's intended purpose of limiting the use of the case files even for plaintiff, himself.  Therefore, the court vacates those portions of its July 18th Order that required the County, through its counsel, to produce the juvenile case files to plaintiff without him signing the Protective Order.

If plaintiff wishes to obtain the juvenile case files from defense counsel, he must sign the Protective Order, or else he must show cause in this court (i) why he should not be required to sign the Protective Order and (ii) how this court can compel production absent a protective order without violating principles of comity and forcing defense counsel to violate the Juvenile Court's

3

March 2022 orders.  To the extent plaintiff is unhappy with the Protective Order requirement or its substantive terms, it seems his proper recourse would be to petition the Juvenile Court (or perhaps seek leave to intervene in Mr. Fessenden's petitions before the juvenile court) to modify the Protective Order requirement.

The court notes that simply signing the Protective Order, as defense counsel has repeatedly requested, will give plaintiff speedy access to the full juvenile case files he seeks.  Plaintiff would then remain free to separately continue to attempt to obtain the juvenile case files either directly from the Juvenile Court by following its Standing Order,[2] or directly from the Department of Child, Family and Adult Services ("DCFAS").[3]  Although the court understands that plaintiff believes he is maliciously being denied access to these files from the Juvenile Court and from DCFAS, it may be that he simply did not fully comply with the specific procedures required for obtaining the files when he previously requested them.  The court encourages plaintiff to carefully read the instructions at the links in the footnotes below if he decides to again request the case files from either entity.  In the meantime, if plaintiff wants the case files to be produced <u>by defense counsel</u>, he will have to sign the Protective Order as required by the Juvenile Court (or show cause in this court why that order can be circumvented).

**MOTION FOR PERMANENT INJUNCTION**

On August 1, 2022, a few days after defendants requested reconsideration, plaintiff filed a motion for "permanent injunction" or sanctions, ostensibly noticed for hearing the following day, August 2, 2022.[4]  (ECF No. 50.)  Plaintiff's motion seeks an order enjoining the County and its agencies "from failing to produce the juvenile case documents." (<u>Id.</u> at 2.)  The motion is based on plaintiff's continued frustration that he has not received access to or copies of his children's

---

[2] Standing Order of Superior Court of California, County of Sacramento, Sitting as the Juvenile Court, No. SSC-JV-99-021, Ninth Amended Order: Disclosure of Juvenile Case Files, p.3, https://www.saccourt.ca.gov/juvenile/delinquency/orders/docs/ssc-jv-99-021.pdf.

[3] Instructions for Requesting Child Protective Services Records, https://dcfas.saccounty.net/CPS/Pages/Requesting-CPS-Records.aspx.

[4] The motion was signed on July 28, 2022, and it is unclear whether the motion was filed in response to the request for reconsideration.

juvenile case files under Section 827 since requesting them in March 2019 and again in August 2021. (Id. at 3, 5-6, 9.) The motion is denied for the following reasons.

Initially, although plaintiff repeatedly requests a "permanent injunction" requiring the County to comply with Section 827, his accompanying brief indicates that this is in fact a motion for a temporary restraining order ("TRO") or preliminary injunction. (Id. at 8.) Although the legal standards for each type of injunctive relief are similar, a permanent injunction would only be available at the conclusion of an action once the court has determined that the plaintiff actually succeeded on the merits of his claims. See Edmo v. Corizon, Inc., 935 F.3d 757, 784 & n.13 (9th Cir. 2019) (first factor for obtaining permanent injunction is "actual success on the merits"); see also Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n. 12 (1987) (standard for permanent injunction is "essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits"). As this litigation is in a very early stage, permanent injunctive relief is not yet available.

Even when construed as a motion for preliminary injunctive relief or a TRO, however, the motion fares no better. A preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. "A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).

Typically, preliminary injunctions are "prohibitory" in nature—prohibiting the defendant from taking a particular action, and thereby preserving the status quo. The general standard for issuing a preliminary injunction requires the plaintiff to establish "a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, a balance of equities in the movant's favor, and that the injunction is in the public interest." Doe v. Snyder, 28 F.4th 103, 111 (9th Cir. 2022) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Sometimes a plaintiff will seek a "mandatory" preliminary injunction, however—defined as "one that goes beyond simply maintaining the status quo and orders the responsible party to take action pending

the determination of the case on its merits." Snyder, 28 F.4th at 111. Requests to compel a defendant "to act prior to the entry of a final judgment" are requests for a mandatory injunction. Id.

"The standard for issuing a mandatory preliminary injunction is high. 'In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Id. (quoting Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation omitted).

Regardless of the nature of the desired preliminary injunction (prohibitory or mandatory), a motion for preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings." Fidelity Nat. Title Ins. Co. v. Castle, 2011 WL 5882878, *3 (N.D. Cal. Nov. 23, 2011) (citing 9 Wright & Miller, Federal Practice & Procedure § 2949 (2011)). The plaintiff, as the moving party, bears the burden of establishing the merits of his or her claims. See Winter, 555 U.S. at 20.

Plaintiff frames his motion as seeking to prevent the County "from failing to produce the juvenile case documents." (ECF No. 50 at 2.) Despite the use of a double negative, this is in fact a request for a mandatory preliminary injunction—that is, one compelling the County to affirmatively produce the juvenile case files. See Snyder, 28 F.4th at 111. The present motion does not meet the heightened standard for issuing a mandatory preliminary injunction.

First, although plaintiff argues he is likely to succeed on the merits of his request for the Section 827 files (based on the court's prior order requiring their production) (see ECF No. 50 at 8), that is not the question. The preliminary injunction inquiry into the likelihood of success "on the merits" refers to success on the merits of the legal causes of action in the complaint, not the likelihood of success on the motion. See Edmo, 935 F.3d at 784 n.13 (noting that the reason for applying a heightened standard for mandatory preliminary injunctions is the concern that the injunction "will upset the status quo only for a later trial on the merits to show that the plaintiff was not entitled to equitable relief" (emphasis added)). Most of the causes of action in the currently operative complaint have little to do with the County's (non)production of the juvenile

case files.  (See ECF No. 16, Second Amended Complaint ("2AC").)  Three of the 22 causes of action assert deprivation of plaintiff's procedural due process rights in the withholding of the juvenile case files because they contained exculpatory evidence.  (Id. at 61-64, COA Nos. 19-21.)  However, these causes of action seek only damages as their remedy, and the only injunctive relief sought in the 2AC overall is an order barring certain DCFAS employees from working in future child removal proceedings.  (Id. at 61-64, 67.)  Plaintiff gives no argument as to his likelihood of succeeding on these procedural due process claims, and the court expresses no opinion on the subject.  The court simply notes that even a showing of likely success on those claims would not necessarily warrant the preliminary injunction plaintiff now seeks—because those claims are for plaintiff's pre-complaint injuries suffered due to nondisclosure of the case files, whereas the desired preliminary injunction relates to plaintiff's continued difficulties in obtaining the case files for prosecution of the case.  Relatedly, it appears that any deprivation of procedural due process can be compensated by damages, as that is the only remedy sought on these claims in the 2AC.  See Snyder, 28 F.4th at 111 (mandatory injunctions are generally not granted "where the injury complained of is capable of compensation in damages").

In addition, given that the County stands ready and willing to produce the full case files to plaintiff as soon as he signs the Protective Order (discussed above), the court sees no "extreme or very serious damage" that will result from denying the preliminary injunction and maintaining the status quo.  See id. (mandatory injunctions generally "are not granted unless extreme or very serious damage will result").

The above analysis demonstrates why a motion for preliminary injunction is fundamentally ill-suited to plaintiff's goal of obtaining his children's juvenile case files.  As explained in the previous section granting defendants' request for reconsideration, plaintiff can obtain these files simply by signing the Protective Order.  To the extent that option is unacceptable to plaintiff, a properly noticed discovery motion is the appropriate method of seeking further judicial intervention in accessing documents that plaintiff believes relevant to his prosecution of the case (but plaintiff will still need to address how this court can order production without violating the juvenile court order and the rule of comity).

Finally, plaintiff did not properly notice this motion. "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Local Rule 231(d) requires all motions for preliminary injunction to be noticed in compliance with Local Rules 144 and 230, governing general motions practice. In the normal course, motions must be scheduled for hearing no less than 35 days after the service and filing of the motion. E.D. Cal. L.R. 230(b). In special circumstances, the court may agree to shorten that time; but a party's unilateral ("ex parte") application to shorten time will not be granted unless the applicant provides an affidavit explaining both the urgency and the reason for not obtaining the opposing parties' agreement to the shortening of time. E.D. Cal. L.R. 144(e).

Here, plaintiff gave merely one day's notice for the motion, which was received by the court and filed on August 1, 2022. This is far too little notice, and plaintiff did not apply for shortened hearing time. Moreover, to the extent plaintiff seeks a TRO without notice to the opposing parties, the motion also does not meet the strict requirements for such relief. See Fed. R. Civ. P. 65(b) (temporary restraining order may issue without notice only if (A) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (B) the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required"); E.D. Cal. L.R. 231(a) ("Except in the most extraordinary of circumstances, no temporary restraining order shall be granted in the absence of actual notice to the affected party and/or counsel, by telephone or other means, or a sufficient showing of efforts made to provide notice."). Accordingly, the court denies plaintiff's motion for preliminary injunction.

In closing, the court also advises plaintiff that the court is not in a position to take any action in response to his repeated "notices of intent to engage in a hunger strike" (ECF Nos. 46, 49), as they relate to post-complaint activities not at issue in this litigation. Future similar filings will be disregarded.

////

////

////

For the above reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion for reconsideration (ECF No. 48) is GRANTED;

    a. The court's order dated July 18, 2022 (ECF No. 43), is VACATED insofar as it required the County of Sacramento to produce to plaintiff his children's juvenile case files without plaintiff signing the protective order presented to the state court;

    b. If plaintiff wishes to obtain the juvenile case files in defense counsel's possession, he must sign the protective order in accordance with the state court's orders, or plaintiff may show cause in this court (i) why he should not be required to sign that protective order, and (ii) how the court can compel production of the case files absent a protective order without contradicting the state court's orders; and

2. Plaintiff's motion for permanent injunction or sanctions (ECF No. 50) is DENIED.

Dated: August 3, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gian.0581